IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-00236-01-CR-W-SRB |
| | ) | |
| DEREK A. WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Pending before the Court is defendant Derek Williams' Motion for Rule 17 Subpoenas and Documents Material to His Defense (doc #200). Defendant seeks to subpoena five witnesses (Arthur Berrier, Jeffrey Comparin, Lance Kvetko, David Rees and a DEA records custodian) and the following documents:

    a) Any document authored by anyone connected to the DEA stating that any of the purported analogues listed in the Superseding Indictment are not analogues of JWH-018;

    b) Any documents, including e-mail, indicating any internal disagreement within the DEA, including the Office of Forensic Sciences, as to whether any purported analogue listed in the Superseding Indictment has a chemical structure substantially similar to a Schedule I or II controlled substance or has a pharmacologic effect (hallucinogenic, stimulant, or depressant) that is substantially similar to or greater than that of a Schedule I or II controlled substance;

    c) Any documentation regarding any purported analogue listed in the Superseding Indictment that SF evaluated, but did not "officially opine" as to whether the substance was an analogue;

    d) The guidance provided by the DEA's Office of Chief Counsel to its agency personnel regarding UR-144 and XLR-11 in its original form prior to modifying the text for distribution;

    e) Any papers documenting guidance provided by the DEA's Office of Chief Counsel to its agency personnel regarding any purported analogue listed in the Superseding

Indictment if those papers relate to whether an analogue has or does not have a substantially similar chemical structure to a controlled substance or a pharmacological effect (hallucinogenic, stimulant, or depressant) that is substantially similar to or greater than that of a Schedule I or II controlled substance;

f) Any documents, reports or data supporting Berrier's opinion that UR-144 does not have a chemical structure that is substantially similar to that of JWH-018;

g) Any documents indicating that it was DEA policy or practice for the Office of Diversion Control to consult with SF as to whether a particular substance had a chemical structure that was substantially similar to that of a Schedule I or II controlled substance;

h) Any documents or e-mails indicating that ODE stopped consulting, and why it stopped consulting, with SF as to whether a particular substance was an analogue;

i) Any documents explaining why the DEA rejected Dr. Berrier's opinion that UR-144 is not an analogue to JWH-018;

j) Any documents supporting the existence of an analogue committee, any documents indicating who sat on the committee, and any opinions offered by the committee as to the chemical structure and/or pharmacologic effect of any of the purported analogues listed in the Superseding Indictment;

k) Any documents indicating that there was an analogue committee protocol and the protocol(s) itself; this request refers to any protocol in effect at the time of the April 19, 2012, e-mail as well as any protocol that existed within the dates specified in the Superseding Indictment;

l) Any documents indicating the protocol(s) was not followed with respect to the analysis of any of the purported analogues listed in the Superseding Indictment;

m) The "running list" of substances kept by SF that was referred to in Lance Kvetko's e-mail of April 19, 2012; and

n) The list of substances on ODE's website referred to in Lance Kvetko's e-mail of April 19, 2012.

(Doc #200 at 4-6)

These requests stem from DEA memos and emails that defense counsel obtained after these documents were produced by the government in other litigation. Generally, these documents provide that on March 23, 2012, the DEA's Office of Diversion Control, Drug and Chemical Evaluation Section (ODE) requested input from the DEA's Office of Forensic

2

Sciences (SF) as part of its deliberative process with regard to whether UR-144 is an analogue of JWH-018.  (Doc #200-1)  Arthur Berrier, a DEA Senior Research Chemist in Special Testing and Research Laboratory (SFL1), concluded that UR-144 and JWH-018 were not substantially similar in structure.  (Docs #200-2 and #200-3)  Thereafter, the following summary of an email string between DEA employees discussed the fact that UR-144 had, nevertheless, been listed as an analogue of JWH-018:

> From: Lance D. Kvetko
> To:  Scott R. Oulton
> cc:  Jeffrey H. Comparin; David K. Rees
>
>> Scott, SF (actually SFL/SFL1) declined to officially opine on UR-144. However, it is now listed on ODE's website ….
>>
>> In case you're curious, Dave is keeping a running list.
>
> From:  Jeffrey H. Comparin
> To:  Lance D. Kvetko; Scott R. Oulton
>
>> Why didn't *we* opine in accordance with the analogue committee protocol?
>
> From:  Scott R. Oulton
> To:  Jeffrey H. Comparin; Lance D. Kvetko
>
>> I had the same question.
>
> From:  Lance D. Kvetko
> To:  Scott R. Oulton; Jeffrey H. Comparin
>
>> Same recurring issue.  Up to you and SF if we wish to pursue and discuss further.  I'm hitting a brick wall at our level.

(Doc #200-4)  Finally, an Alert Regarding Discovery Issue in Prosecutions of UR-144 and XLR11 as Controlled Substance Analogues was issued which stated in part:

> This notice is to advise you of a discovery issue with respect to prosecutions in which the substance UR-144 or the substance XLR11 is alleged to be a controlled substance analogue.  The issue arises from an apparent disagreement of a Drug Enforcement Administration (DEA) chemist as to whether UR-144 has a chemical structure that is "substantially similar" to that of

> the controlled substance JWH-018 such that UR-144 meets the first prong of the definition of a "controlled substance analogue" under 21 U.S.C. § 802(32).
>
> In August 2013, DEA's Office of Chief Counsel provided guidance to its agency personnel regarding UR-144 and XLR11, a substance with a chemical structure that is similar to UR-144. DEA has modified the text of that guidance for inclusion as an attachment to this notice. If your office has a controlled substance analogue case involving UR-144 or XLR11, you are encouraged to inquire of DEA for additional details, including information for potential disclosure to the defense in accordance with the discovery practice in your district.
>
> * * *
>
> … As stated by DEA, a chemist assigned to another component, with which ODE consulted as part of its deliberative process, opined that UR-144 and JWH-018 were not substantially similar in chemical structure. ODE considered the differences in chemical structure but ultimately reached the opposite conclusion. ODE did not consult the other component during deliberations regarding XLR11, but prosecutors have learned that the same dissenting chemist may have a similar opinion regarding the structural similarity of XLR11 and JWH-018. DEA advises, however, that the chemist has not conducted a formal review or offered a written opinion regarding the structural similarity of those two substances.

(Doc #200-5 at 1 and 2) The attachment to the notice provided in part that "ODE may, but is not required, to request input from SF as part of its analogue determination process. SF does not employ pharmacologists, so the inquiry is limited to chemical structures. … ODE did not consult with SF regarding XLR11 during the deliberative process." (Doc #200-5 at 3 and 4)

Since the filing of Defendant Williams' Motion for Rule 17 Subpoenas and Documents Material to His Defense, the government has filed a Motion for Leave to Narrow the Superseding Indictment (doc #214) in which the government removes UR-144 from the charging document. The government urges that "because of the omission of UR-144 from the superseding indictment, the defendant's requests lack the requisite level of materiality and should be denied." (Government's Supplemental Response to Defendant Williams' Motion for Rule 17 Subpoenas and Documents Material to His Defense (doc #229) at 2)

4

The Court disagrees that the omission of UR-144 from the superseding indictment negates the issues raised by defendant.  In <u>United States v. $177,844.68 in United States Currency</u>, Nos. 2:13-cv-100-JCM-GWF, 2:13-cv-947-JCM-GWF, 2015 WL 4227948, at *1 (D. Nev. July 10, 2015), a case in which the government sought the forfeiture of monies that were allegedly derived from the manufacture or distribution of controlled substance analogues, the government amended its complaint to substitute XLR-11 for UR-144.  In response to the government's argument that Dr. Berrier's opinion that the chemical structures of UR-144 and JWH-018 are not substantially similar is irrelevant because the government no longer alleges that the subject substances manufactured or sold contain UR-144, the court found:

> The Government's substitution of XLR-11 as the alleged analogue in this case does not necessarily render Dr. Berrier's 2012 opinion on UR-144 irrelevant.  If the differences in the chemical structures of UR-144 and XLR-11 from that of JWH-018 are substantially the same, then Dr. Berrier's opinion regarding the differences between UR-144 and JWH-018 may also be relevant to the comparison between XLR-11 and JWH-018. … The Government has not eliminated the relevance of Dr. Berrier's opinion by substituting XLR-11 as the alleged controlled substance analogue in this case.

<u>Id.</u> at *5.  Further, in the Alert Regarding Discovery Issue in Prosecutions of UR-144 and XLR11 as Controlled Substance Analogues, the DEA apparently views Dr. Berrier's conclusions as relevant to both UR-144 and XLR-11.  In addition, the email string set forth above does not limit the "recurring issue" to UR-144, as UR-144 was added to the "running list."  Most of the controlled substance analogues pertinent to the charges against defendant were evaluated by the DEA prior to its evaluation of UR-144, so they too might be included in this running list.

Recently, Judge Daniel Crabtree was presented with a request for the following three documents:

> 1. An analogue committee protocol, requiring the DEA's Office of Diversion Control (ODE) to consult with the DEA's Office of Forensic Science (SF) before determining that a substance was an analogue;

5

2. An internal list of substances that the DEA had concluded were analogues; and

3. A running list of substances that the DEA had added to its internal list of analogues in violation of the analogue-committee protocol.

Defendant's Motion to Compel at 1-2, United States v. Broombaugh, No. 14-40005-DDC (D. Kan. Feb. 13, 2017)(doc #983). Judge Crabtree granted the motion to compel, stating:

> The court grants defendant's Motion to Compel the DEA documents. The court finds that the documents are material to the defense. Title 21 U.S.C. § 802(32)(A) defines a controlled substance analogue, in part, as one "the chemical structure of which is substantially similar to the chemical structure of a controlled substance." And, under binding precedent, the government must prove beyond a reasonable doubt that defendant *knew* the substances listed in the indictment had a "substantially similar chemical structure" to a controlled substance. *See McFadden v. United States*, 135 S.Ct. 2298 (2015); *United States v. Makkar*, 810 F.3d 1139 (10th Cir. 2015). So, while UR-144's placement on a purported list as a controlled substance analogue does not determine defendant's culpability under the CSSA, what defendants knew or did not know about UR-144's chemical structure is a central issue in this case. If sophisticated chemists at the DEA disagreed over UR-144's chemical structure and whether it was substantially similar to that of a controlled substance, their disagreement—if indeed they disagreed—may make it less probable that defendants knew the answer to this central question. This is all that Fed. R. Evid. 401[1] requires.

United States v. Adams, No. 14-40005-DDC, 2017 WL 712795, at *2 (D. Kan. Feb. 23, 2017).

This Court agrees with the reasoning of Judge Crabtree and finds the documents defendant Williams seeks through this motion material to preparing the defense. In prosecutions involving analogues, the government must prove that a defendant knew that the substance with which he was dealing was a controlled substance analogue, that is he knew that the substance was treated as an analogue (even if he did not know its particular identity) or that its physical

---

[1] The government argues that Judge Crabtree should have used the materiality standard for Rule 16, rather than the relevant evidence standard of Fed. R. Evid. 401. (Government's Supplemental Response to Defendant Williams' Motion for Rule 17 Subpoenas and Documents Material to His Defense (doc #229) at 6) The Court notes that while Judge Crabtree mentions Rule 401, he states that "the documents are material to the defense."

properties were substantially similar to a scheduled controlled substance (even if he did not know its legal status as an analogue).  See McFadden v. United States, 135 S.Ct. 2298, 2305 (2015); United States v. Sullivan, 714 F.3d 1104, 1107 (8th Cir. 2013); United States v. Awad, Crim. No. 15-78 (SRN/BRT), 2016 WL 492146, *2 (D. Minn. Jan. 19, 2016).  If sophisticated chemists at the DEA disagreed over whether the chemical structures of the charged analogues were similar to that of a scheduled controlled substance, their disagreement may make it less probable that defendant Williams knew the answer to this central question.  See Adams, 2017 WL 712795, at *2.  See also United States v. Singh-Sidhu, No. 3:13-cv-00032-RCJ-VPC-1, 2017 WL 1364582, at *5 (D. Nev. April 13, 2017)("the Court cannot at this time say with confidence that the jury would have [found substantial chemical similarity of UR-144 and JWH-018] beyond a reasonable doubt had trial counsel introduced evidence of the internal dispute at the DEA's own laboratory on that issue"); United States v. Nashash, No. 12 CR 00778(PAC), 2014 WL 169743, at *1 (S.D.N.Y. Jan. 15, 2014)("If the Government is in possession of documents showing that these substances [UR-144 and XLR-11] are not substantially similar to JWH-018, that information bears directly on the Defendants' guilt. … [D]ocuments like [Dr. Berrier's email] would undoubtedly 'alter the quantum of proof' in Defendants' favor and therefore are material to their defense.")  The documents defendant seeks either relate to the internal disagreement in the DEA over the evaluation of UR-144, XLR-11 and other unidentified controlled substance analogues documented by the DEA memos and emails attached to defendant's motion or are referenced in these DEA memos and emails.  To the extent that the requested documents exist, the government should produce them.

With respect to the requested witness subpoenas, the Court finds that like the requested documents, these witnesses have information relating to the internal disagreement in the DEA

7

over the evaluation of UR-144, XLR-11 and other unidentified controlled substance analogues documented by the DEA memos and emails. Therefore, the Court finds that the testimony of these witnesses is necessary for an adequate defense.[2]

The Court is not persuaded by the government's arguments relating to the deliberative process privilege or the Touhy regulations. These same arguments were made in the Adams case and discounted by Judge Crabtree. With respect to Dr. Berrier, Judge Crabtree found:

> The government plans to call DEA expert witnesses to testify that substances listed in the indictment—including UR-144—meet essential components of the statutory definition of a controlled substance analogue. Defendant is entitled to question a member of the same agency who, it appears, may have dissented from that opinion about a substance placed at issue by the indictment. The government also contends that Dr. Berrier's testimony would mislead the jury because he works for the DEA, but he does not work for the department of the DEA that makes the "substantially similar" determination. Indeed, the government contends that the ODE alone is responsible for evaluating drugs and is the final word on whether a substance has a chemical structure substantially similar to a controlled substance. This apparently escaped ODE's understanding, for it was ODE, as part of its evaluation, who solicited the opinion of the SF office where Dr. Berrier worked. Thus Dr. Berrier's testimony is relevant, and it will not be unduly cumulative or misleading so as to outweigh its probative value under Rule 403.
>
> Also, … the court is not convinced that the deliberative process privilege applies to Dr. Berrier's testimony [as the government has chosen to designate as its trial experts chemists who routinely participate in the deliberative process purportedly protected by this privilege]. But even if it does, the government has waived this privilege [when it disclosed the DEA emails during other prosecutions].

---

[2]The Court notes that in the Adams case, Judge Crabtree granted the defendant's request to subpoena Arthur Berrier and Jeffrey Comparin, but denied the request to subpoena Lance Kvetko and David Rees. Judge Crabtree found Mr. Kvetko and Mr. Rees collateral to the issues justifying Dr. Berrier's and Mr. Comparin's appearances, as well as cumulative. Contrary to Judge Crabtree's finding, this Court finds that Mr. Kvetko and Mr. Rees are not merely collateral or cumulative to Dr. Berrier and Mr. Comparin. Mr. Kvetko is the author of the emails that mention the "running list" and the "recurring issue." Mr. Rees is allegedly the one keeping the "running list." Both of these witnesses appear to have testimony necessary for an adequate defense.

8

The government also contends 5 C.F.R. § 2635.805 bars Dr. Berrier from being subpoenaed to testify. But federal district courts consistently "have rejected the assertion that 5 C.F.R. § 2635.805 bars federal employees from being subpoenaed to provide otherwise admissible expert opinion testimony." *$177,844.68 in U.S. Currency*, 2015 WL 4227948, at *6 (citing *Dean v. Veterans Admin. Regional Office*, 151 F.R.D. 83 (N.D. Ohio 1993): *Young v. United States*, 181 F.R.D. 344 (W.D. Tex. 1997): *Massey v. United States*, 2013 WL 960273 (S.D. Miss. 2013)). The court now joins this line of cases refusing to recognize 5 C.F.R. 2635.805 as a separate privilege allowing the government to shield employees with relevant information from being called as witnesses. *See $177,844.68 in U.S. Currency*, 2015 WL 4227948, at *7.

Finally, the government contends that defendant cannot overcome the burden imposed by the *Tough* regulations because [defendant] cannot show a substantial need for the evidence. The court disagrees. While defendant has hired his own expert witnesses to testify about the substances in this case, Dr. Berrier's opinion that UR-144's chemical structure is not substantially similar to JWH-018 is relevant, and defendant should be able to question him as part of his defense.

United States v. Adams, No. 14-40005-DDC, 2017 WL 712795, at *3-4 (D. Kan. Feb. 23, 2017).

The Court agrees with Judge Crabtree's stated reasoning. Defendant should be able to question Arthur Berrier, Jeffrey Comparin, Lance Kvetko, David Rees and a DEA records custodian as part of his defense.

Based on the foregoing, it is

ORDERED that Defendant Williams' Motion for Rule 17 Subpoenas and Documents Material to His Defense (doc #200) is granted.

                                                                           /s/ *Sarah W. Hays*
                                                                          SARAH W. HAYS
                                                UNITED STATES MAGISTRATE JUDGE