# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                 Plaintiff,<br><br>   v.<br><br>DEREK A. WILLIAMS,<br><br>                 Defendant. | Case No. 13-00236-01-CR-W-SRB |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

**1. The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Thomas M. Larson, Acting United States Attorney, and Catherine A. Connelly, Assistant United States Attorney, and the defendant, Derek A. Williams ("the defendant"), represented by Ronna Holloman.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

**2. Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to Count Nine of the second superseding indictment charging him with a violation of 18 U.S.C. § 371 that is, conspiracy to mislead by: causing the introduction of misbranded drugs into interstate and foreign commerce, in violation of Title 21, United States Code, Section 331(a); and by receiving and causing the receipt of misbranded drugs in interstate and foreign commerce and to deliver and

proffer delivery thereof for pay or otherwise, in violation of Title 21, United States Code, Section 331(c). By entering into this plea agreement, the defendant admits that he knowingly committed this offense, and is in fact guilty of this offense. The defendant further agrees to and hereby does plead guilty to Count Ten of the second superseding indictment charging him with a violation of 18 U.S.C. § 1957(a), that is conspiracy to commit money laundering. By entering into this plea agreement, the defendant admits that he knowingly committed these offenses, and is in fact guilty of these offenses. Defendant also admits that the property noted in the Forfeiture Allegation of the second superseding indictment, with the exceptions noted in paragraph 6(i) of this agreement, constitutes proceeds of said violations and will, therefore, be forfeited as part of this agreement.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offense to which he is pleading guilty are as follows:

Defendant admits that between on or about March 1, 2011, and on or about November 27, 2012, said dates being approximate, in the Western District of Missouri, and elsewhere, he did knowingly and intentionally combine, conspire, confederate and agree with ASHLI ADKINS, JASON E. SPARKS and others, to introduce into interstate and foreign commerce "LemonLime," "MeanGreen," "Orange," "Fire," "Berry Faded" and "LiteBubble Gum" and other synthetic cannabinoid products which contained a detectable amount of 1-pentyl-3- (2-chlorophenylacetyl)indole, hereafter JWH-203; 1-pentyl-3-(2-methoxyphenylacetyl)indole, hereafter JWH-250; 1-pentyl-3-(4-ethyl—1-naphthoyl)indole, hereafter JWH-210; 1- (5-fluoropentyl)-3-(2-iodobenzoyl)indole, hereafter AM-694; 1-(5-fluoropentyl)-3- (1-naphthoyl)indole, hereafter AM-2201; 1-pentyl-3-(4-methyl-1-naphthoyl)indole, hereafter JWH–122; 1-(5-fluoropentyl)-3-(2,2,3,3-tetramethylcyclopropyl)indole, hereafter XLR-11; 1-pentyl-3-(4-methoxynaphthoyl)indole, hereafter JWH-081; and 1-hexyl-3- (1-naphthoyl)indole, hereafter (JWH-019), all synthetic cannabinoid drugs, which were misbranded drugs within the meaning of Title 21, United States Code, Sections 352(a) and (f)(1), because their labeling was false and misleading in that it identified the products as "incense," and "not for human consumption," and because the labeling failed to bear adequate directions for use. Defendant also admits the same was delivered and proffered for delivery for pay or otherwise; all in violation of Title 18, United States Code, Section 371, and Title 21, United States Code, Sections 331(a), and (c).

Defendant further admits that between on or about March 1, 2011, and on or about July 8, 2012, said dates being approximate, in Jackson and Clay Counties, within the Western District of Missouri and elsewhere, he did knowingly and intentionally combine, conspire, confederate, and agree with ASHLI ADKINS, JASON E. SPARKS, and others, to engage and attempt to engage, in monetary transactions by, through or to a financial institution, affecting interstate and foreign

commerce in criminally derived property of a value greater than $10,000, that is, funds, such property having been derived from a specified unlawful activity, that is, conspiracy to distribute mixtures or substances containing a detectable amount of JWH-203, JWH-250, JWH-210, AM-694, AM-2201, JWH-122, XLR-11, JWH-081, and JWH-019, each a controlled substance analogue as defined in Title 21, United States Code, Section 802(32)(A), knowing that each substance was intended for human consumption as provided in Title 21, United States Code, Section 813, contrary to the provisions of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C). All in violation of Title 18, United States Code, Sections 1957(a) and 1956(h).

Specifically, as it relates to Count Nine of the second superseding indictment, during the conspiracy term it was part of the conspiracy that the synthetic cannabinoid products were packaged in foil packets and sold at retail establishments throughout the United States under the brand name "SynIncense." Further the defendant admits that he used the term "incense" in the product brand name when, in fact, his "SynIncense" products were synthetic cannabinoids intended for consumption in order to obtain a physiological effect of a "high."

Each of the synthetic cannabinoid products were misbranded in at least one of the following respects:

   a.   The synthetic cannabinoid products' labeling did not bear adequate directions for use;
   b.   The synthetic cannabinoid products' had false and misleading labeling in that they were labeled in a manner indicating they were not for human consumption when, in fact, the synthetic drugs were intended for human consumption; and
   c.   The synthetic cannabinoid products did not bear a label containing the name and place of the business, the manufacturer, packer or distributor.

The defendant further admits that during the conspiracy term, he and other members of the conspiracy shipped/transported misbranded synthetic cannabinoids to Antonio Jamie Nunez, an unindicted co-conspirator, doing business as Main Stop, located at 320 East Main Street, Neosho, Missouri, who then resold the misbranded drugs to consumers. Finally, defendant admits that during the conspiracy term, he and other members of the conspiracy shipped/transported misbranded synthetic cannabinoids to Christopher Hatcher, an unindicted co-conspirator, doing business at the website Commonscents.com, who then resold the misbranded drugs to consumers.

In total, defendant agrees that during the conspiracy term he sold at least 2000 kilograms of synthetic cannabinoids.

Further, the Government can and would present proof of the following: that equal amounts of JWH-203; JWH-250; JWH-210; AM-694; AM-2201; JWH-122; XLR-11; JWH-081; and JWH-019 are structurally similar to JWH-018 and have similar physiological effects on the human body. Further, the Government can and would present proof that equal amounts of the above noted

3

substances have a similar effect on the human body. The defendant does not challenge the Government's experts on either of these points.

In addition, as it relates to Count Ten of the second superseding indictment, during the conspiracy term, the defendant admits that the objectives of the money laundering conspiracy were accomplished through financial transactions noted in the second superseding indictment including, but not limited to:

    a.    Between March 1, 2011, and July 8, 2012, DEREK A. WILLIAMS and ASHLI ADKINS wire transferred at least $2,831,912, to Pash Trading Group, Light Commerce Limited, Ai Biotech, All American Containers, RS Hughes Co. Inc., RCS Labs, Inc., and Zombie Matter, LLC, from Bank of America account number ending in 0666.

    b.    On or about April 11, 2011, DEREK A. WILLIAMS and ASHLI ADKINS wire transferred $81,406.02, from Bank of America account number ending in 0666, to the Commerce Bank account of JASON E. SPARKS, account number ending in 1748.

    c.    On or about May 17, 2011, DEREK A. WILLIAMS and ASHLI ADKINS wire transferred $53,971.83, from Bank of America account number ending in 0666, to the Commerce Bank account of JASON E. SPARKS, account number ending in 1748.

    d.    On or about June 29, 2011, DEREK A. WILLIAMS and ASHLI ADKINS transferred $123,600.56, from Bank of America account number ending in 0666, to the Commerce Bank account of JASON E. SPARKS, account number ending in 1748.

    e.    On or about September 26, 2011, DEREK A. WILLIAMS and ASHLI ADKINS wire transferred $147,636.15, from Bank of America account number ending in 0666, to the Commerce Bank account of JASON E. SPARKS, account number ending in 1748.

    f.    On or about September 27, 2011, DEREK A. WILLIAMS and ASHLI ADKINS wire transferred $91,371.57, from Bank of America account number ending in 0666, to the Commerce Bank account of JASON E. SPARKS, account number ending in 4680.

    g.    On or about December 12, 2011, DEREK A. WILLIAMS and ASHLI ADKINS wire transferred $23,914.91, from Bank of America account number ending in 0666, to the Commerce Bank account of JASON E. SPARKS, account number ending in 1748.

    h.    On or about January 5, 2012, DEREK A. WILLIAMS and ASHLI ADKINS wire transferred $31,824.60, from Bank of America account number ending in

0666, to the Commerce Bank account of JASON E. SPARKS, account number ending in 1748.

  i. On or about February 27, 2012, DEREK A. WILLIAMS and ASHLI ADKINS wire transferred $37,530.27, from Bank of America account number ending in 0666, to the Commerce Bank account of JASON E. SPARKS, account number ending in 1748.

  j. On or about March 8, 2012, DEREK A. WILLIAMS and ASHLI ADKINS wire transferred $31,316.24, from Bank of America account number ending in 0666, to the Commerce Bank account of JASON E. SPARKS, account number ending in 1748.

  k. On or about March 23, 2012, DEREK A. WILLIAMS and ASHLI ADKINS wire transferred $21,580.99, from Bank of America account number ending in 0666, to the Commerce Bank account of JASON E. SPARKS, account number ending in 1748.

  l. On or about April 2, 2012, DEREK A. WILLIAMS and ASHLI ADKINS wire transferred $16,020.08, from Bank of America account number ending in 0666, to the Commerce Bank account of JASON E. SPARKS, account number ending in 1748.

  m. On or about April 24, 2012, DEREK A. WILLIAMS and ASHLI ADKINS wire transferred $18,873.41, from Bank of America account number ending in 0666, to the Commerce Bank account of JASON E. SPARKS, account number ending in 1748.

  n. On or about May 21, 2012, DEREK A. WILLIAMS and ASHLI ADKINS wire transferred $20,500.29, from Bank of America account number ending in 0666, to the Commerce Bank account of JASON E. SPARKS, account number ending in 1748.

  o. On or about June 4, 2012, DEREK A. WILLIAMS and ASHLI ADKINS wire transferred $16,986.68, from Bank of America account number ending in 0666, to the Commerce Bank account of JASON E. SPARKS, account number ending in 1748.

  p. On or about June 6, 2012, DEREK A. WILLIAMS and ASHLI ADKINS wire transferred $17,573.55, from Bank of America account number ending in 0666, to the Commerce Bank account of JASON E. SPARKS, account number ending in 1748. All in violation of Title 18, United States Code, Section 1956(h).

**4. Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea

agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the indictment as well as all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charge to which he is pleading guilty.

5. **Statutory Penalties.** The defendant understands that upon his plea of guilty to Count Nine of the second superseding indictment charging him with a violation of 18 U.S.C. § 371, that is, conspiracy to mislead by causing the introduction of misbranded drugs into interstate and foreign commerce, the maximum penalty the Court may impose is not more than 1 year imprisonment, not more than a $1000 fine, not more than 1 year of supervised release, and a $25.00 mandatory special assessment that must be paid in full at the time of sentencing. The defendant understands that this offense is a Class A misdemeanor. Defendant further understands that upon his plea of guilty to Count Ten of the second superseding indictment charging him with a violation of 18 U.S.C. § 1957(a), that is conspiracy to commit money laundering, the maximum penalty the Court may impose is not more than 20 years imprisonment, not more than a $500,000 fine, not more than 3 years supervised release, and a $100 mandatory special assessment which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class C felony.

6. **Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of up to three years; that the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed;

d. if the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to three years without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed three years, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

e. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

f. any sentence of imprisonment imposed by the Court will not allow for parole;

g. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office;

h. the defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court; and

i. the defendant agrees that the United States may institute civil, judicial or administrative forfeiture proceedings against all forfeitable assets in which the defendant has an interest, and that he will not contest any such forfeiture proceedings.

j. the defendant agrees to forfeit all interests he owns or over which he exercises control, directly or indirectly, in any asset that is subject to forfeiture to the United States either directly or as a substitute for property that was subject to forfeiture but is no longer available for the reasons set forth in 21 U.S.C. § 853(p)

(which is applicable to this action pursuant to list applicable 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c)), including all property named in the forfeiture allegation in the second superseding indictment, except that the United States agrees not to forfeit the following items: one 2011 Ford Edge Sport Edge SUV, VIN:2FMDK4AK3BBA02891 and one 2008 Kawasaki Ninja ZX-10R motorcycle, VINJKAZXCE158A006172.[1] With respect to any asset which the defendant has agreed to forfeit, the defendant waives any constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution.

7. **Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses related to Count Nine, that is, conspiracy to mislead by causing the introduction of misbranded drugs into interstate and foreign commerce or related to Count Ten, that is conspiracy to commit money laundering, for which it has venue and which arose out of the defendant's conduct described above. The United States Attorney's Office further agrees to dismiss the remaining counts of the second superseding indictment at sentencing.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises

---

[1] The United States agrees also not to forfeit the following items that were not listed in the second superseding indictment: one IPad; one IMac; one Canon EOS camera, serial number 187003174; one Samsung phone; and one Alien Ware computer.

8

made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

8. **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a Government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the counts to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored

to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw his plea of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts his plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his plea of guilty.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

   a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

   b. The applicable Guidelines section for the offense of conviction is U.S.S.G. § 2B1.1, which calls for a cross-reference to § 2D1.1 which provides for a base offense level of 38 (90,000 KG or more of marijuana);

   c. The defendant has admitted his guilt and clearly accepted responsibility for his actions, and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a three-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or (2) attempts to withdraw his guilty plea, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility;

   d. The parties anticipate that the defendant falls into the zero criminal history category. However, there is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

  e. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does <u>not</u> bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels.  Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty;

  f. The United States agrees not to seek an upward departure from the Guidelines.  This agreement by the parties is not binding upon the Court or the United States Probation Office and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable";

  g. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum.  The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the second superseding indictment.  The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay;

  h. The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement; and

  i. The parties agree that at sentencing neither party will argue for a sentence greater than probation.

**11.** **<u>Effect of Non-Agreement on Guidelines Applications.</u>**  The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections.  As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

**12. Change in Guidelines Prior to Sentencing.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

**13. Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

    a. oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

    b. comment on the evidence supporting the charge in the indictment;

    c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

    d. oppose any post-conviction motions for reduction of sentence, or other relief.

**14. Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a. the right to plead not guilty and to persist in a plea of not guilty;

    b. the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

    c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

  d. the right to confront and cross-examine the witnesses who testify against him;

  e. the right to compel or subpoena witnesses to appear on his behalf; and

  f. the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that if he pleads guilty, the Court may ask him questions about the offense or offenses to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. The defendant also understands he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

**15.** **<u>Waiver of Appellate and Post-Conviction Rights</u>.**

  a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

  b. The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

**16. Financial Obligations.** By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

    a. The Court may order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the second superseding indictment which are to be dismissed and all other uncharged related criminal activity.

    b. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

    c. The defendant will fully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full.

    d. Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

    e. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution.

    f. The defendant hereby authorizes the USAO to obtain a credit report pertaining to him to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

    g. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $125 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The

defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing.

  h. The defendant certifies that he has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future.

  i. The defendant agrees that the United States may institute civil, judicial or administrative forfeiture proceedings against all forfeitable assets in which the defendant has an interest, and that he will not contest any such forfeiture proceedings.

  **17.** **Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

  **18.** **Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

  **19.** **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

**20.  Defendant's Representations.**  The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys or any other party to induce him to enter his plea of guilty.

**21.  No Undisclosed Terms.**  The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

**22. Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

                                                Thomas M. Larson
                                                Acting United States Attorney

Dated: 7/14/17                           */s/ Catherine A. Connelly*
                                                Catherine A. Connelly
                                                Assistant United States Attorney

      I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the second superseding indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 7/14/17                           */s/ Derek A. Williams*
                                                Derek A. Williams
                                                Defendant

      I am defendant Derek A. Williams' attorney. I have fully explained his rights to him with respect to the offenses charged in the second superseding indictment. Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, Derek A. Williams' decision to enter into this plea agreement is an informed and voluntary one.

Dated: 7/14/17                           */s/ Ronna Holloman*
                                                Ronna Holloman
                                                Attorney for Defendant